Okay. Yes, your honor. May it please the court. My name is Michael Balaban and I represent Vincent Fried in this matter. And the reason we appealed this case is because clearly the rule of law was not followed here with respect to summary judgment. What a judge is supposed to do on a summary judgment is look at all the facts in the favor of the non-moving party, make all reasonable inferences for the non-moving party, and then and only then if he or she feels that no reasonable jury could decide in the favor of the non-moving party, in this case plaintiff, then summary judgment is granted. The main issue here is with respect to the termination and how the judge comes to the conclusion that it's not reasonable for a jury to conclude that Mr. Fried was terminated because of his gender is beyond me. I mean, he's the one in this case that the only one, the only manicurist to have, he's the only manicurist to have questioned the paper. Counsel, is it your argument that the video doesn't clearly show that he has to have seen the drink in his client's hand, the champagne? The video, I mean, we are not disputing that the video might've shown that he saw that he saw it, but he was not consciously aware of it. And the standard is... Sorry, was that anywhere in his declaration that he didn't see the champagne in the hand of his client? Yes, it was a couple of times. Let me follow up on Judge Bennett. That's what I was going to ask you in particular. I don't think anybody disagrees that the judge cannot grant summary judgment if there's a genuine issue of material fact, but I'm having some trouble on that. That is that there's enough evidence to get to the jury that, and you can tell me what the best evidence is that you have to establish that his termination was not an appropriate one based upon alcohol and was pretext. What do you have? Okay, the evidence, I mean, first of all, does it make sense to you that somebody is carding or asking for an ID from a customer and then 10 minutes later is not following up and making sure that the minor has a drink or not? I mean, it makes no sense. And then with respect... Well, I'm not so sure about making sense. We're talking about evidence. What is the evidence that should go to the jury on this issue? Okay, the issue of credibility that would establish enough for the jury to to find pretext and not that he was fired for the alcohol incident. Okay, the pretext would be the conclusion that he knowingly allowed her to have the drink the second time and the fact that none of the other manicurists were even disciplined. Again, they were all females. He was a male. That, you know, that's... Let's go back into exactly what Judge Bennett said. What did he say was the reason? What evidence does he have to establish that that he was not involved in the alcohol incident? What evidence does Mr. Freed have? Yes, because that's it. That's the issue. What is he going to offer to show a genuine issue of material fact? Well, the genuine issue of material fact is Wynn is saying that he was terminated for knowingly, again, knowingly serving a minor. Mr. Freed's position, which again, it only makes common sense if he's carting somebody. He's not going to let them have an alcoholic beverage 10 minutes later. So Mr. Freed's case is simple. They are saying... But counsel, this is what he said in paragraph 24 of his deck. I know the security camera shows me looking up occasionally or appearing to look at the glass of champagne, but I wasn't consciously aware that my guest had been given the glass. But the camera shows me looking at the glass of champagne. So even if the Wynn made a mistake, why isn't... We see him looking at the glass of champagne. We're going to draw the conclusion that that's not the type of manicurist we want here, who either knows it or isn't focusing on what's going on. And so we're going to fire him and the woman who is knowingly involved. Why do you get to the summary judgment on pretext, given your client's admission about what the video shows? Because again, I mean, on summary judgment, you are supposed to, the court is supposed to look at all the evidence in favor of the non-movie party and make all reasonable inferences for the non-movie party. Could a conclusion like you're saying be accurate? Yeah, it could be accurate. And if a jury, an unbiased jury heard the evidence, they could come to that conclusion. But again, when there is substantial evidence in the other favor, in Mr. Fried's favor, it is not proper for a court to grant summary judgment on that issue. Well, counsel, in admittedly other contexts, but I think relevant contexts, usually involving the police and qualified immunity, we often say, we as the court can look at the video and see what it says and that we're not required to credit an affidavit that is contrary to the video. And while the video doesn't show your client's state of mind, the video shows him looking at the champagne. But again, the difference there in response to what you're saying is again, knowingly, again, we have declarations. Counsel, counsel, I'm going to interrupt you if I could, because I think about half of your time is gone. And I'm really hoping you're going to get to your hostile work environment claim. Could we could we turn to that? Yeah, yeah, we can we can address that. I mean, I don't mean to cut you off, but I think we've got your answer on the other issue. And I'm very concerned about the hostile work environment ruling on this case. I'll tell both counsel, I'd really appreciate if you could address that. Okay. I mean, with respect to hostile work environment case, and it seems that all the cases nowadays, whatever is put forward to the court, it's not severe and pervasive enough. I mean, here we have multiple incidences over about a four month period. They're corroborated, different employees state their, you know, that, that they heard or how it happened to them, also some of the co workers. I mean, what do you want for a hostile environment? I mean, I don't know how many, how many complaints you're talking about. But my impression is, is that he never complained about those comments. Did he? Is there any evidence to show he complained about his comments over the, I think it's a substantial period of time he was working there? Am I missing something? Yeah, well, he never complained about them. But again, and we discussed this in our brief, if they're trying to bring up a Ella Fairger type of argument that they didn't have a chance to address the situation. I mean, it's clear that when that, you know, they admitted in the Steve Wynn case that they didn't address his concerns for years. So, so even if Mr. Fried had brought it up, chances are nothing would have been done about it. But again, I don't think counsel counsel, you're, you're, I'm asking you to direct your attention to a different point. And so if you could do that, that would be great. And I'm talking about a point that he absolutely, you briefed this, he absolutely did complain about the customer who came in and propositioned him on the floor. And he went to his supervisor Barajas and complained immediately. I think that's uncontested in this record. At least when I say it's uncontested, that is certainly your allegation. And we view the facts and light most favorable to your client. Ms. Barajas denies that that occurred. But my understanding of that circumstance, if we could, and now you don't have that much time left, so correct me if I'm wrong, but for both lawyers, I am very concerned about the hostile work environment claim. My understanding is the fact pattern is that Mr. Fried was working on the floor. He was to interact with a customer and provide a pedicure, the pedicure that the customer propositioned him in a very graphic and overt way. He immediately complained, he says to Ms. Barajas for purposes of summary judgment, and that the management's reaction was to order him back out onto the floor and to complete the pedicure for that customer. So we have, as you both know, this is in the briefing, Little versus Windermere. The case where we have said it is cognizable, not necessarily that the employer is responsible for the conduct of the customer, but that a hostile work environment could be created by the employer's response. In this case, ordering him to go back out and complete the pedicure. Could both of you, when you have your time, speak to that? Why is that alone not enough? Yeah, I mean, we would argue that it is. I mean, he made a sexual proposition to my client, and we would argue that that is enough, and that when he complained to his supervisor about that, she just told him to go back and finish the service. So our position is yes, that is a hostile environment right there. It's a different question whether the employer would ever be liable for that. It's a two-part inquiry, and I think the district court here only got to the first question, which is whether that's a hostile. So just to be clear, I'm only asking about whether or not there's an issue of fact about whether that fact pattern that I've paraphrased imprecisely creates a hostile work environment. That's my question. Yes, and our response would be yes, it does. I think their response is no, it's not severe enough. Well, we'll let her, we'll let opposing counsel get to that. You've got about three minutes left on your time. Is there anything else you want to say? Well, just with, also with the retaliation, I mean, I think that arguably there's also retaliation here. I mean, they're claiming that Ms. Barajas, his supervisor, was not the one that made the decision, although she signed the termination pan. She was the originator of the approvals on it. In an interrogatory, they said Ms. Barajas was involved. She was also his supervisor. So again, it's, in my opinion, it's just self-serving them trying to say that no, Ms. Barajas didn't have anything to do with the termination decision. Let's come back to, let's go to opposing counsel. When we come back, sir, maybe you can be getting ready. I need help with the ER site that you're just referring to. I've got the, I can't read the signature. I want to make sure that we're looking at the same document on the retaliation claim. So when you come back, if you could give me that citation to the record, that would be helpful. I'd like to stop there and your time for rebuttal is up. Yes, sure. Good afternoon, ma'am. Please, the court, Jen Serafina from the law firm of Cable and Zucker Abbott for the appellee in Las Vegas, LLC. Of course, we would agree that the court properly granted summary judgment on all three claims here. I can go through each of them, but to respond to some of the questions that we had regarding the termination, um, although Freed's declaration, you know, two years into litigation indicates that he was not consciously aware. It's very important to review excerpt of the record at 39, which was his handwritten statement that he provided on the day of the incident on June 20th, which is when the incident was freshest in his mind. And he writes, and I quote, almost done with service. I saw the almost done with service. That means service wasn't completely done, which means he had an opportunity to speak with her about the fact that, oh, how did you get that champagne? And he was coming upon him at that point to take it away from her. So that is why the, the wind is proper and was reasonable to ascribe knowledge to him. That is combined with, as we, you discussed with my opposing counsel, the videotape that was reviewed that clearly saw him looking up and, and conversing with the guests. And instead of a glass of iced tea, she has a flute of champagne. He says he wasn't consciously aware of it, but again, also an excerpt of the record supplemental excerpt at page 12, which is the investigation summary. Uh, when he was done with the pedicure, he's walking her over to the manicure section. So still under his control, he escorts her there with the flute of champagne in, in her hand. So he had between all of that, it was reasonable for wind to ascribe knowledge to them. It was his own handwritten declaration at the time of the events. Um, moreover, Ms. Lager also had knowledge. She had knowledge because free told her that his guest was underage. And that's why he ordered the iced tea for her. She also had knowledge because the receptionist, Tony, uh, Daniels also told, told her that Fred's guest was underage. So the two people who had knowledge that this guest was underage and still allowed that person to drink an alcoholic beverage were termed. One was a man. One was a woman. That's why the sex discrimination claim really fails in this. What about the hostile work environment claim? Sure. Now with the hostile work environment claim, um, we all know the Harris v. Forklift, uh, factors, whether it's a frequency severity, um, whether it's physically threatening and whether it unreasonably, um, interfered with the employee's ability to perform their job. And here it's primarily the Wiggs comments. There was a comment about using his culinary degree. So I'm, I'm sorry, counsel that that is not what it's primary to me. You have a customer who propositions him for sex in some detail. He immediately goes to his supervisor and his supervisor, according to paragraph 16 of his declaration tells him he has to finish the environment. A proposition for sex explicit goes immediately to his supervisor and he's told go back to the propositioner and complete the service in close physical contact with the propositioner. Well, again, if we look at the Harris v. Forklift, um, factors that this was in, uh, the pedicure area, which is in the main part of the salon, just so we're understanding, this is not in a private guest room. It's not in a private service room where there was a door closed. Right. So he was ordered. We understand that. And he was ordered to go back and complete the service, which involves, I think, uh, somewhat ironically kneeling at this man's feet. That's what I understand from a pedicure. How is that not a hostile work environment? Well, it's, it's just, they were only verbal comments that were made. So in many of the other cases that have found a single, so if there's only one single event, it has to be very severe in order for it to rise to the hostile work environment. So when we see that, we often see instances, and it's not just rape, but instances of rape, instances of physical groping in private areas and that type of thing. Creed admitted that the only physical contact that the guest made to him was lightly touching him on his arm as they walked at the end of service to the reception area. Counsel, some of the case law you're referring to, of course, is 20 years old. I don't know if it would be decided the same way today, but I think, and, and, and correct me if I'm wrong, but, but don't you see this circumstance and the way it comes to us is that in order for you to prevail today, we would have to say that no reasonable juror could decide that the circumstance that Judge Bennett and I have described creates a hostile work environment. Well, yes, but I mean, when we really think about what happens in the workplace, I mean, I'm not trying to minimize this and I'm sure Mr. Freed was uncomfortable, but when we talk about a hostile work environment, we look at the Breeden case and other cases, it has to be very, very severe. And this is, again, I'm not diminishing his, his uncomfortability, but it was a comment and comments sometimes get made in the workplace. Counsel, we're still not, you're missing, because what we said in the Little versus Windermere case, you know, whether the employer is responsible for the customer is an entirely different question. This is a, this is, this, we're positing is, is the employer's response to the customer and ordering him back out on the floor is what Judge Bennett and I are trying to call your attention to. Right. So if that happened, I mean, that's obviously not the right response, but again, I, the case law that is in place right now, it does not rise to the level of a hostile work environment. Moreover, I would just point out that this is the, this happened the day before Freed served as underage guest. During that week long intensive investigation with employee relations, Mr. Freed met with employee relations on numerous occasions. He never brought it up. That's a jury argument, counsel. That's not an argument to us. And maybe the jury is, is going to credit that, but I just have a really hard time seeing how, where you are propositioned explicitly for sex by someone who you are having physical contact with as part of doing your job and your employer, instead of saying, this is terrible and either throwing the customer out or at the very least saying, you don't have to ever see this man again, says the exact opposite. Not only do you have to see him, but you have to finish your service, which includes physical contact. I mean, it's hard for me to see how in the light, most favorable to the non-moving party, that doesn't establish the requisite hostility. Well, in response to that, in the cases where it's found, hostile work environment is found, one of the Harris factors is whether it unreasonably interferes with the employee's ability to perform the job. Freed admitted that he was able to complete the service in 35 minutes. He was ordered to complete the service. If he hadn't completed it, he risked being fired. I mean, I don't think anybody disputes the fact that he was physically able to, to complete the service, but that can't be the test that you're physically able to do the next 10 minutes of your means that the work environment is hostile. Well, again, that is, that's one of the factors. And so, again, I feel like it would be very different if we were in an enclosed room and it wasn't. It wasn't physically threatening to him. Again, it was probably an uncomfortable thing. Though in a casino, a lot of times customers will say things and just like the Breeden case says, every uncomfortable situation or every time someone makes a comment or teases somebody, that doesn't rise to the level of a hostile work environment. Let me ask you, when he returned and he actually completed the service, did he say anything in an affidavit or otherwise as to how uncomfortable it was? So did the customer in any way continue to harass him? I don't believe, I don't believe so. Though that it's your position that there was, he was ordered back, but the severity of the original proposition and then the ordering to go back when he was there, nothing else occurred. That's my understanding because I believe that's what the deposition testimony showed. The deposition testimony shows that he felt horrible the whole time when he went back to complete the pedicure. I think the test you're talking about is whether there's physical intimidation or whether the circumstance was humiliating. Since we're at the procedural posture and we're not fact finders, we have to look at the facts and the light most favorable to the plaintiff. I think you do have to, in order to prevail today, convince us that no reasonable juror could decide. Right, but in response to Judge Silver's comments there, he was able to do that. And the timing was the guest made the comments, he then, this is what plaintiff alleges, he went and then complained about it. And apparently, in light most favor to the non-moving party, he had to go back, but there's no allegation that the guest continued to say things and that he continued to be sexually aggressive towards him while he finished the last part. He simply said, quote, I was forced to finish the pedicure and felt absolutely horrible the whole time, close quote. And I think that anybody, if these facts are true, would feel that way about being forced by your employer to provide physical services to someone who had improperly just tried to proposition you for sex in four or five different ways. Are there any other questions? Yes, counsel, could you help me out? I've asked both of you about the retaliation claim. Sure. And opposing counsels made the representation that Ms. Barajas has signed off on the paperwork, I'll call it. And when I'm looking at ER 45, it looks like it's tough to read signatures, I guess is what it boils down to. Is there a different document I should be looking to? This seems to have Sarah... Sure, that is one of the termination plans. There's also the internal document. It's at excerpt of the record 152. And so again, when we talk about a non-moving party being afforded all reasonable inferences, that has to be based on personal knowledge. Mr. Freed was not a managerial employee who does not know the inner workings of how paperwork is routed. This is in Ms. Prescott's affidavit at supplemental excerpt of record 43. But at the win, the manager of the department is the one who initiates the document. It then gets routed to the people who approve it. So just because she originated the document doesn't mean that she was a person who made the decision to terminate him. And there's no evidence that it's to the contrary. Excuse me for interrupting you. So when I go to ER 152, and maybe this is just that I misunderstood. I only know the one document that's got signatures on it and 152 is the box. I have that as well, but that's the check boxes. Right, that's the originator and shows who approved the termination decision. Okay. You've answered my question and that's very helpful. Thank you. In terms of those who made the decision to terminate him, were they aware of the customer's complaint of harassment at the time he was terminated? Is there any evidence of that? No, there's no evidence of that because number one, again, Freed never mentioned it during his interviews with employee relations. But number two, as it is in the record, Barajas denied ever being told about this guest in the first place. So there was no way for employee relations who are the ones who made the decisions to have known about that, especially since Freed did not bring that up. And regardless of that, remember we're at a but-for causation standard. So Freed has to prove that but-for his complaint to Barajas about the guest, he would not have been terminated. But both employees, male and female, who knowingly allowed their underage guests to consume an alcoholic beverage were complained. So he can't meet that burden on the retaliation claim. Thank you for your argument. Council, it's very helpful. And thank you for your patience with our questions. Absolutely. Council, would you like to be heard? You have a couple of minutes. Yes, yes. Just briefly on some of the points with respect to the termination issue as to Mr. Freed's declaration. Again, he also testified or in the declaration, he declared that he never saw it served to her and asked for it or her asked for it. He also, a week later on the 27th, this was before this case was brought, said that he was trying to do the service and he didn't see the glass of champagne. Again, on this argument, are we saying that you couldn't come to the conclusion, looking at the video and whatnot, that he had knowledge? We're not saying that. But on summary judgment, that is not the proper inquiry. Except Council, they don't have to prove he had knowledge. They have to prove that there wasn't discrimination based on the facts that were available to them. Could a reasonable trier conclude the opposite based on the facts that it is undisputed were available to them, which is much different? Yeah. But again, on the discrimination issue, again, all of the other manicures, the four other manicures were not disciplined at all. He was. They're female. He's male. So again, at least arguably, you could conclude that it was because of discrimination. And again, on summary judgment, that's all our burden is, is to show that if you look at all the facts in favor of the non-moving party, make all inferences for the non-moving party, that it's reasonable to come to that conclusion. And I think we've done that here. With respect to the hostile environment issue, I think you guys got it right on that. I mean, I think that it was a hostile environment. Let me ask you a question about that, too. And that is, I would like for you to give me the best case you can, that the request for sex qualifies as and then the response to go back and do your service anyway. What is the best case you have that that constitutes on its own severe enough to establish a hostile work environment? What's your case? You mean a cited case? I mean, a case, you know, because I'm familiar as as defense counsel may have with a with a single act that would on itself be so severe as to constitute a hostile work environment. But I'm looking for a case for that that is maybe closer to this. Well, let me put it this way. I don't think that you need to show rape to get to that. I mean, that's what their counsel is trying to say. If it's not rape, then it's not a good case that's close to this. That is not as you know, that is less severe than rape. I mean, I cited some in my reply brief and also my opening brief. And then just lastly, on the retaliation issue, again, if we're just going to go what the employer says on who had knowledge and who made the decision to terminate, again, they'd always win. Again, on summary judgment, you're supposed to look at the opposing party's evidence, make all inferences for the opposing party. And here, again, their documents look at their documents. Their documents are in opposite of what they're saying that Ms. Barajas had no knowledge of it or I mean, no decision making power on it. So we've got your argument counsel and we you're significantly over your time. We've got your both parties very much. We'll take that matter under advisement, please, and go on to the next case on our calendar. Okay. Thank you.
judges: Christen, Silver, Bennett